UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
------------------------------------------------------------------ x
In re                                                              :
                                                                   :   Chapter 11
MARKETXT HOLDINGS CORP., MKXT, LLC,                                :
MARKETXT, INC., AND EPOCH                                          :   Case No. 04-12078 (ALG)
INVESTMENTS, LP,                                                   :   (Substantively Consolidated)
                                                                   :
                              Debtor.                              :   Adv. Pro. No. 08-1102
                                                                   :
------------------------------------------------------------------ x
ALAN NISSELSON, as Chapter 11                                      :
Trustee of MARKETXT HOLDINGS CORP., and the                        :
OFFICIAL COMMITTEE OF UNSECURED                                    :
CREDITORS,                                                         :
                                                                   :
                              Plaintiffs,                          :   Case No. 08-CV-05963 (MGC)
                                                                   :
              -v.-                                                 :   ECF Case
                                                                   :
                                                                   :
KEVIN WALTZER and STEWART F. GROSSMAN,                             :
trustee of the Newtown Trust,                                      :
                                                                   :
                              Defendants.                          :
------------------------------------------------------------------ X

**BRIEF OF APPELLEES, ALAN NISSELSON AS RESPONSIBLE OFFICER OF
MARKETXT HOLDINGS CORP. AND THE PLAN COMMITTEE, IN OPPOSITION TO
APPEAL FROM ORDER OF BANKRUPTCY COURT SUBORDINATING APPELLANTS'
CLAIM PURSUANT TO SECTION 510(b) OF THE BANKRUPTCY CODE**

WINDELS MARX LANE
  & MITTENDORF, LLP
156 West 56th Street
New York, NY 10019
Howard L. Simon (HLS-6362)
hsimon@windelsmarx.com
Regina Griffin (RG-6877)
rgriffin@windelsmarx.com
Tel. (212) 237-1000
Fax (212) 262-1215
  *Counsel for Alan Nisselson, Responsible
  Officer of MarketXT Holdings Corp.*

KAYE SCHOLER LLP
425 Park Avenue
New York, New York  10022
Lester M. Kirshenbaum (LK-8139)
lkirshenbaum@kayescholer.com
Margarita Y. Ginzburg (MG-6240)
mginzburg@kayescholer.com
Tel. (212) 836-8000
Fax (212) 836-8689

  *Counsel for the Plan Committee
  of MarketXT Holdings Corp.*

{10468199:10}

# **TABLE OF CONTENTS**

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 3 |
|     A. The Bankruptcy Case | 3 |
|     B. The Nature of Waltzer's Claim | 3 |
| THE BANKRUPTCY COURT'S DECISION | 5 |
| STATEMENT OF ISSUE PRESENTED ON APPEAL | 6 |
| ARGUMENT | 6 |
| I. THE BANKRUPTCY COURT CORRECTLY HELD THAT THE WALTZER CLAIM FALLS SQUARELY WITHIN THE STATUTORY LANGUAGE OF BANKRUPTCY CODE § 510(B) AND THAT THE POLICIES UNDERLYING THE STATUTE WOULD BE CONTRAVENED WERE THE COURT TO PERMIT THE WALTZER CLAIM TO COMPETE WITH CREDITORS' CLAIMS | 6 |
| A. The Waltzer Claim Falls Squarely Within the Language of the Statute | 6 |
| B. The Bankruptcy Court Correctly Determined that the Policies Underlying Section 510(b) Require Subordination of the Waltzer Claim | 8 |
| C. Appellants' Attempt to Portray the Bankruptcy Court's Decision as a Departure from the Case Law is Completely Unfounded | 11 |
| D. The Bankruptcy Court's Decision is Consistent With Its Earlier Decision in <u>Nisselson v. Softbank</u> Because It and Other Courts Have Distinguished Between Claims Based on Promissory Notes and Claims Seeking to Recover an Equity Investment in a Debtor | 12 |
| E. The "Harshness" of the Result Is Not a Basis for Denial of Subordination of the Waltzer Claim Pursuant to Section 510(b) | 14 |
| CONCLUSION | 16 |

# TABLE OF AUTHORITIES

## CASES

**Page**

In re Alta+Cast, LLC, 301 B.R. 150 (Bankr. D. Del. 2003)..................................................7, 13

In re Betacom of Phoenix, Inc., 240 F.3d 823 (9th Cir. 2001) ....................................................10

In re Calpine Corp., 2007 U.S. Dist. LEXIS 86514 (S.D.N.Y. 2007).........................................7

In re Enron Corp., 341 B.R. 141 (Bankr. S.D.N.Y. 2006)................................................. 10, 14-15

In re Granite Partners, 208 B.R. 332 (Bankr. S.D.N.Y. 1997) .................................................8-9

Official Comm. of Unsecured Creditors v. Am. Capital Fin. Servs. (In re Mobile Tool Int'l, Inc.),
    306 B.R. 778, 782 (Bankr. D. Del. 2004) ............................................................................13

Montgomery Ward Holding Corp. v. Schoeber (In re Montgomery Ward Holding Corp.),
    272 B.R. 836, 839 (Bankr. D. Del. 2001) ............................................................................13

Nisselson v. Softbank AM Corporation f/k/a Softbank Finance Corporation (In re
    MarketXT Holdings Corp.), 361 B.R. 369 (Bankr. S.D.N.Y. 2007)...................................2, 12

In re Pre-Press Graphics Company, Inc., 307 B.R. 65 (N.D.Ill. 2004)........................................7

Rombro v. Dufrane (In re Medical Diversified, Inc.), 461 F.3d 251
    (2d Cir. 2006)..................................................................................................8, 9, 10, 11, 12

In re Telegroup, 281 F.3d 133 (3d Cir. 2002)..............................................................8, 9, 11, 12

In re Vista Eyecare, Inc., 283 B.R. 613 (Bankr. N.D.Ga. 2002) ...................................................7

In re Worldcom, Inc., 329 B.R. 10 (Bankr. S.D.N.Y. 2005) .....................................................7, 10

U.S. Wireless Corporation, Inc. v. Wax (In re Wireless Corp., Inc.), 384 B.R. 713, 725
    (Bankr. Del. 2008) ..........................................................................................................13-14

## STATUTES

11 U.S.C. §510(b) ..................................................................................................................passim

## MISCELLANEOUS

Slaine and Kripke, The Interface Between Securities Regulation and Bankruptcy—
    Allocating the Risk of Illegal Securities Issuance Between Securityholders and the
    Issuer's Creditors, 48 N.Y.U. L. Rev. 261 (1973).................................................................8, 9

## PRELIMINARY STATEMENT

Appellees Alan Nisselson, as Responsible Officer of the substantively consolidated estate of MarketXT Holdings Corp. ("MarketXT Holdings" or the "Debtor"), and the Plan Committee (collectively, the "Appellees"), submit this brief in opposition to the appeal of Appellants Kevin Waltzer ("Waltzer") and Stewart F. Grossman as Trustee of the Newtown Trust ("Grossman") (collectively, "Appellants") from the Order of the Bankruptcy Court (Hon. Allan L. Gropper) entered on June 4, 2008, subordinating Appellants' bankruptcy claim in accordance with Section 510(b) of chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

The bankruptcy claim which was the subject of the Bankruptcy Court's subordination order had been based upon a New York state court lawsuit Appellant Waltzer had commenced against the Debtor and its principals, seeking damages for fraud and/or rescission in connection with the sale of his stock (the "Waltzer Claim").[1] In the bankruptcy case, Appellees in their former respective capacities as the estate's chapter 11 trustee and the Official Committee of Unsecured Creditors[2] had commenced an adversary proceeding against Appellants seeking, among other things, subordination of the Waltzer Claim pursuant to 11 U.S.C. § 510(b).

In a decision dated May 22, 2008 (the "Decision"), the Bankruptcy Court granted the Appellees' motion for summary judgment on their cause of action to subordinate the Waltzer Claim pursuant to Section 510(b), finding "that the plain meaning of the statute covers Waltzer's

---

[1] Although the claim is referred to as the "Waltzer Claim," on February 19, 2008, a Notice of Transfer of the Waltzer Claim to Defendant Grossman was filed in the Debtor's bankruptcy case. See Appendix, KW00568. To the extent Defendant Grossman is in fact a transferee of the Waltzer Claim, Grossman takes the Waltzer Claim subject to all of the objections and defenses which the Debtor and/or the Trustee possess to the Waltzer Claim. Both Waltzer and Grossman are Appellants herein.

[2] Pursuant to the Creditors' Committee's and Chapter 11 Trustee's Amended Joint Plan of Liquidation in Chapter 11 (the "Plan"), which became effective June 2, 2008, the former chapter 11 Trustee, Alan Nisselson, is now acting as the Distribution Agent and Responsible Officer (the "Responsible Officer"), and the former members of the Creditors' Committee have been appointed, and are acting as the Plan Committee (the "Plan Committee").

{10468199:10}

claim, which is for fraud in connection with the sale of securities in the Debtor."[3] As set forth below, the plain language of Bankruptcy Code § 510(b) and the policies underlying the statute mandated this determination. Indeed, because the Waltzer Claim sought recovery of the value of his equity interest in the Debtor, the Bankruptcy Court had no discretion to decline to subordinate the Waltzer Claim.

On this appeal, Appellants offer no valid basis for overturning the Bankruptcy Court's decision. The only new argument advanced by Appellants is that the Bankruptcy Court committed an error by ignoring its own earlier decision in Nisselson v. Softbank AM Corporation f/k/a Softbank Finance corporation et al. (In re MarketXT Holdings Corp., 361 B.R. 369 (Bankr. S.D.N.Y. 2007). To the contrary, the Bankruptcy Court pointed out the material and well recognized distinction for purposes of Section 510(b) between the Waltzer Claim and the type of claim asserted by the creditor in Softbank, which was seeking to recover a claim against the Debtor based upon a promissory note.

As a last resort Appellants contend that, had the Bankruptcy Court taken into account equitable considerations and the circumstances surrounding the Waltzer Claim, it would have reached a different result. However, subordination under Section 510(b) is not discretionary, and the Bankruptcy Court was required to follow Congress' mandate as expressed in the statute.

Accordingly, Appellees respectfully submit that the order of the Bankruptcy Court should be affirmed.

---

[3] The statute provides that for the purpose of distributions under Chapter 11, "a claim arising from rescission of a purchase or sale of a security of the debtor or an affiliate of the debtor, for damages arising from the purchase or sale of such security . . . shall be subordinated to" claims of general unsecured creditors. 11 U.S.C. § 510(b).

{10468199:10}                                           2

## STATEMENT OF FACTS

### A.    The Bankruptcy Case

On March 26, 2004 (the "Petition Date"), certain creditors commenced an involuntary case against MarketXT Holdings under chapter 7 of the Bankruptcy Code. Appendix, KW00457. An Order granting the Debtor's motion to convert the case to a voluntary case under chapter 11 was entered on December 2, 2004. Id.

On December 16, 2004, pursuant to Bankruptcy Code § 1102, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee"). Id. On January 28, 2005, the Court entered an Order appointing Alan Nisselson as chapter 11 trustee (the "Trustee") for the MarketXT Holdings' chapter 11 estate. Id.

### B.    The Nature of Waltzer's Claim

On or about May 5, 2005, Appellant Kevin Waltzer filed the Waltzer Claim in the Debtor's case in the amount of $6,724,375.15. Appendix, KW00460. The Waltzer Claim referred to a state court action which he had commenced in 2001 against the Debtor and its former principals, entitled Kevin Waltzer v. Tradescape & Co., L.L.C. et. al, New York County Supreme Court Index No. 603415/2001, in which Waltzer alleged that he was defrauded into selling his ownership interest in the Debtor for far less than it was worth. Appendix, KW00460, KW00464.

Waltzer's Amended Complaint in the state court action asserted causes of action for, among other things, rescission of Waltzer's sale of his 7½% ownership interest in the Debtor's entities, a declaratory judgment that Waltzer has a 7½% ownership interest in the Debtor's Tradescape entities and TCorp entities, and money damages for fraud, breach of fiduciary duty and breach of contract in an amount equal to the "current value" of his 7½% ownership interest in the Debtor. Appendix KW00511-00519.

In papers filed in the Debtor's bankruptcy case in connection with a motion to lift the automatic stay, Waltzer's counsel described the Waltzer Claim as follows:

> 5. As established in the Waltzer Action, in November, 1996, Waltzer provided $250,000 seed money to fund the creation of two related limited liability companies, collectively then called C.S. Block, later called Tradescape. One was a holding company (that, apparently, later became the debtor) the other was an operating company (later reorganized into three operating companies and collectively sold for $100 million to E*Trade). <u>In exchange for his investment, Waltzer became a 7½ % owner/non-managing member of the Tradescape holding and operating companies.</u>
>
> 6. As established by an order of the state court in the Waltzer Action, in the Fall of 1998, <u>Defendants defrauded Waltzer into selling his interest in the companies</u>. Defendants told Waltzer that the business was doing poorly when, in truth, the business was doing extremely well and was about to receive as investments, millions of dollars in new capital. Following the investments, the business was sold to E*Trade Financial Corp. in June 2002, for 11,750,000 shares of E*Trade stock, then worth approximately $100 million dollars.
>
> 7. As a 7½ % owner of the Tradescape operating companies sold to E*Trade, Waltzer is seeking 7½ % of the consideration paid by E*Trade. (That is, 7 ½ % of the E*Trade shares, i.e., 881,254 shares or, if they are no longer in the hands of defendants, damages equal to their value at the time, $7.5 million dollars). <u>As an alternate theory of damages, Waltzer is seeking the difference between what he was paid for his ownership interest and its fair market value (approximately $4 million).</u>

See Appendix, KW00464-00465 [emphasis added].

After Waltzer obtained a default judgment in the state court against the Debtor and its principals for liability on Waltzer's claims for fraud in connection with the sale of his shares (as a sanction for the failure of the Debtor's principals to produce documents), Waltzer's damages were determined in a proceeding before a Special Referee appointed by the state court.[4] The

---

[4] A history of the Waltzer state court litigation is set forth more fully in the Bankruptcy Court's decision at pp. 2-4. Appendix, KW00813-815.

Special Referee determined that Waltzer was entitled to damages of $4.666 million, representing the value of Waltzer's 7.5% ownership interest in the Debtor as of the date he sold his shares, less the $275,000 he had already received in consideration for the shares. Appendix, KW0072-0073. Based upon the Special Referee's decision, the New York County Supreme Court entered judgment for Waltzer against the Debtor on February 23, 2008 in the amount of $6,665,210 (presumably reflecting interest on the damages awarded). Appendix, KW00075-0078.

Immediately upon learning that a judgment had been entered in Waltzer's state court action against the Debtor, the Appellees commenced an adversary proceeding in the Bankruptcy Court, seeking among other things, a declaration that the state judgment was not entitled to preclusive effect because the inquest at which Waltzer's damages had been determined had been conducted without notice to the Trustee. Appendix, KW0031-0032. The Appellees also sought in a separate cause of action a declaration that the Waltzer Claim was subject to mandatory subordination under Section 510(b) of the Bankruptcy Code. Appendix, KW0032-0033. As discussed in more detail below, the Bankruptcy Court in a decision dated May 22, 2008 (Appendix, KW00812-820) granted Appellees' motion for partial summary judgment, and entered an Order dated June 4, 2008, subordinating the Waltzer Claim pursuant to § 510(b). Appendix, KW00832-0083.

## THE BANKRUPTCY COURT'S DECISION

In the Bankruptcy Court's Decision, the court held that the Waltzer Claim must be subordinated pursuant to Section 510(b) because it is a claim for damages arising from fraud in connection with the sale of his ownership interest in the Debtor. Appendix, KW00816. The court below cited the plain language of the statute, and the policies underlying Section 510(b) that fraud claims by equity investors should not compete with creditors' recoveries in bankruptcy

cases. Appendix, KW00816-00817.

The Bankruptcy Court's Decision rejected Waltzer's arguments that his claim fell outside of the scope of Section 510(b), and that the statute was no longer applicable to his claim because he had obtained a post-petition judgment in the state court litigation. Appendix, KW00817-819. The Bankruptcy Court also found no merit in Waltzer's argument that for purposes of Section 510(b), his claim should be treated in the same manner as the Bankruptcy Court had treated the claim of a creditor based upon a promissory note in <u>Nisselson v. Softbank Am Corp. (In re MarketXT Holdings )</u>, 361 B.R. 369 (Bankr. S.D.N.Y. 2007). Appendix, KW00817-819.

## STATEMENT OF ISSUE PRESENTED ON APPEAL

Did the Bankruptcy Court err in determining that Section 510(b) of the Bankruptcy Code mandated the subordination of the Waltzer Claim?

## ARGUMENT

### I

### THE BANKRUPTCY COURT CORRECTLY HELD THAT THE WALTZER CLAIM FALLS SQUARELY WITHIN THE STATUTORY LANGUAGE OF BANKRUPTCY CODE § 510(b) AND THAT THE POLICIES UNDERLYING THE STATUTE WOULD BE CONTRAVENED WERE THE COURT TO PERMIT THE WALTZER CLAIM TO COMPETE WITH CREDITORS' CLAIMS

A.  **The Waltzer Claim Falls Squarely Within the Language of the Statute**

Section 510(b) of the Bankruptcy Code provides:

> [A] <u>claim arising from</u> rescission of a purchase or <u>sale of a security of the debtor</u> or an affiliate of the debtor, for damages arising from the purchase or sale of such security, or for reimbursement or contribution allowed under section 502 on account of such a claim, <u>shall be subordinated</u> to all claims or interests that are senior to or equal the claim or interest represented by such security. [emphasis added]

The analysis of Waltzer's claim under Section 510(b) is simple and straightforward. The Waltzer Claim arises directly from the sale of Waltzer's ownership interest in the Debtor, and

asserted that Waltzer was defrauded into selling his shares in the Debtor for far less than they were worth, and that he was entitled to either rescission of the sale or damages. The Special Referee in the state court action determined that Waltzer is entitled to substantial damages representing the value of Waltzer's ownership interest in the Debtor on the date he sold his shares. Appendix, KW00539.

Waltzer's Claim, which arises directly from the sale of his stock in the Debtor, virtually tracks the language of Section 510(b), and therefore the Bankruptcy Court properly held the claim was subject to mandatory subordination. See In re Vista Eyecare, Inc., 283 B.R. 613, 628 (Bankr. N.D.Ga. 2002) (holding claim by shareholder for damages arising from the debtor's failure to repurchase his stock pursuant to put agreement "arose from sale of stock" and was therefore subject to subordination); In re Pre-Press Graphics Company, Inc., 307 B.R. 65 (N.D.Ill. 2004) (court subordinating claim based upon debtor's failure to purchase claimant's stock at fair value, finding "there can be no doubt that his claim arises from the purchase or sale of securities"); In re Alta+Cast, LLC, 301 B.R. 150, 155 (Bankr. D. Del. 2003) (court finding that debtor's failure to purchase back claimant's membership interest in the debtor was "clearly a claim arising from an agreement for the sale or purchase of a security of the Debtor"); In re Calpine Corp., 2007 U.S. Dist. LEXIS 86514 (S.D.N.Y. 2007) ("So long as the claimant's interest enabled him to participate in the success of the enterprise and the distribution of profits, the claim will be subordinated pursuant to section 510(b)"); see also In re Worldcom, Inc., 329 B.R. 10, 14 (Bankr. S.D.N.Y. 2005) (holding that where "the nature of the damage or harm complained of by a shareholder can be said to result as a consequence of his having purchased or sold shares of stock or other securities of the debtor, the claimant falls within the scope of Section 510(b)") [emphasis added].

B.  **The Bankruptcy Court Correctly Determined that the Policies Underlying Section 510(b) Require Subordination of the Waltzer Claim**

The Bankruptcy Court correctly concluded that permitting the Waltzer Claim to be treated on a par with creditors' claims would have contravened the policy underlying 510(b) "to limit the claims of equity investors in the subsequent bankruptcy of the enterprise." Appendix, KW00817.

The Bankruptcy Court observed that:

> Equity investors have the most to gain – indeed, Waltzer claims that his $250,000 investment in the Debtor was worth millions of dollars two years later. But equity investors also have the most to lose, because their equity interests are paid last and Congress determined in Section 510(b) that their fraud claims should not be permitted to compete with creditors' recoveries.

Id.

The legislative history of Section 510(b) makes it clear that the motivation behind Congress' enactment of the statute was a law review article written by Professors John J. Slain and Homer Kripke, The Interface Between Securities Regulation and Bankruptcy—Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors, 48 N.Y.U. L. Rev. 261 (1973) ("Slain and Kripke"). See generally Rombro v. Dufrayne (In re Med Diversified, Inc.), 461 F.3d 251, 255-56 (2d Cir. 2006) (noting that Slain & Kripke article "motivated the promulgation of the statute"); In re Telegroup, 381 F.3d 133, 139 (3d Cir. 2002) ("In enacting § 510(b), Congress relied heavily on [Slaine & Kripke's] article").

Slain and Kripke had analyzed the distinctly different risks and expectations of investors and creditors. The creditor expects no more than the repayment of his fixed debt, while the investors, on the other hand, share the profits to the exclusion of the creditors. In re Granite

Partners, L.P., 208 B.R. 332, 336 (Bankr. S.D.N.Y. 1997). The shareholder's enhanced risk of insolvency[5] represents the flipside of his unique right to participate in the profits. Id.

Slain and Kripke therefore concluded that there should be mandatory subordination of shareholder fraud claims because the bankruptcy courts' favorable treatment of such claims provided "investors a windfall by giving them an opportunity to reap the benefits of a profitable entity and by allowing them to share with creditors in the event the enterprise was forced to reorganize or liquidate." In re Med Diversified, Inc., 461 F.3d 251, 256 (2d Cir. 2006) [citations omitted].

Congress, in enacting section 510(b), adopted Slain and Kripke's policy rationales for mandatory subordination. Id. Thus, when the courts are determining whether the subordination of a particular claim will further the purposes of Section 510(b), the main focus is whether the claimant took on the risk and return expectations of a shareholder, rather than a creditor.[6] Id.

Waltzer took on the risk and return expectations of a shareholder when he invested in the Debtor. The Waltzer Claim seeks to recover the value of his ownership interest in the Debtor, which he claims he was deprived of by the wrongful conduct of the Debtor and its principals. Section 510(b) was expressly designed "to prevent disaffected equity investors," like Waltzer, "from recouping their investment losses in parity with general unsecured creditors in the event of bankruptcy." In re Telegroup, 281 F.3d 133, 142 (3d Cir. 2002).

---

[5] The allocation of the risk of insolvency to the investors is reflected in the absolute priority rule, which places creditors ahead of equity, and should not be reallocated. Id. (quoting Slain and Kripke at 286-87).
[6] Although the courts will also consider whether the Claimant seeks to recover a contribution to the equity pool presumably relied upon by creditors in deciding whether to extend credit to the debtor," it is the "risk allocation rationale which is more integral to any policy analyses of 510(b) . . . . Congress and the courts have clearly elevated the issue of risk (rather than creditor reliance) to the fore." In re Med Diversified, 461 F.3d at 259.

Waltzer attempts to argue that, because he sold his shares in the Debtor years ago, he no longer has the "risk and return expectations of a shareholder," and therefore the purposes of Section 510(b) would not be furthered by subordination of his claim. Appellants' Brief at 10, 17.

As a preliminary matter, this "policy" argument ignores the plain language of the statute, which expressly provides for subordination of claims "for damages arising from the ...<u>sale</u> of such security". Second, retention of the claimant's stock or even shareholder status is irrelevant to the policy considerations or application of the statute. See, e.g., In re Med Diversified, 461 F.3d 251 (2d Cir. 2006) (subordinating claim against debtor arising out of debtor's failure to issue stock to claimant, citing Ninth Circuit case subordinating claims of individuals who never received the shares they were due and never had an opportunity to share in benefits of ownership); In re Worldcom, 329 B.R. 10, 15-16 (Bankr. S.D.N.Y. 2005) ("In either case, the stockholder's loss represented by diminution in or destruction of the value of his stock ultimately constitutes a claim for damages derived from his ownership of stock and therefore "arising" from his purchase of the stock, <u>whether the stockholder retained his stock or sold it</u>.") [emphasis added]; In re Enron, 341 B.R. 141 (Bankr. S.D.N.Y. 2006) (quoting same); see also In re Betacom of Phoenix, Inc., 240 F.3d 823 (9th Cir. 2001) ("[n]othing in §510(b)'s test requires a subordinated claimant to be a shareholder").

As to the policy considerations underlying Section 510(b), although Waltzer sold his shares, the Waltzer Claim seeks to recoup his shareholder return expectations – the value of his investment. Appellants Br. at 14; Appendix, KW00464; Appendix, KW00539. Based upon an investment of $250,000, Waltzer is seeking to recover more than $6.4 million on a par with creditors. As Judge Gropper aptly stated in reference to the policies and purposes underlying Section 510(b) as applied to the Waltzer Claim:

> Equity investors have the most to gain – indeed, Waltzer claims that his $250,000 investment in the Debtor was worth millions of dollars two years later [when he sold his shares]. But equity investors also have the most to lose, because their equity interests are paid last and Congress determined in § 510(b) that their fraud claims should not be permitted to compete with creditors' recoveries.

Appendix, KW00817.

### C. Appellants' Attempt to Portray the Bankruptcy Court's Decision as a Departure from the Case Law is Completely Unfounded

Appellants' contention that the Bankruptcy Court's Decision is a departure from the case law is unfounded. Indeed, the cases Appellants rely upon on this appeal have broadly construed Section 510(b) and subordinated claims where the claim involved, unlike here, was not directly attributable to fraud in the purchase or sale of an equity interest in a debtor. See In re Med Diversified, 461 F.3d at 256-57 (subordinating claim of former executive of a debtor who alleged that the debtor breached his employment termination agreement by failing to issue to the executive shares of the debtor's common stock, even though former executive never purchased or sold any shares of the debtor); In re Telegroup, 281 F.3d at 140 (finding Section 510(b) has broad scope, subordinating claim that debtor breached an agreement with shareholders to use its best efforts to register its stock, rejecting the contention that the claim must directly arise out of the purchase or sale of a security of the debtor).

There is similarly no merit to Appellants' argument that the Bankrupcy Court "paid no mind" to the Second Circuit's "warning" that when it comes to deciding whether a claim "arises from" a purchase or sale of a security, the statute has no plain meaning and is ambiguous. While the phrase "arising from" may be susceptible to being read broadly or narrowly, as the Waltzer Claim directly arises from the sale of his securities in the Debtor, there is no ambiguity as to his

claim. In re Med Diversified, 461 F.3d at 138 (court looks to the application of Section 510(b) to the particular claim to determine whether the phrase "arising from" is ambiguous).

In any event, a "narrow" reading of the phrase "arising from" has been rejected in favor of a much broader interpretation of the statute. In re Med Diversified, 461 F.3d at 259 ("In conclusion, we interpret section 510(b) broadly..."); In re Telegroup, 281 F.3d at 135-36 (court stating it agrees with debtor that §510(b) should be read "broadly").

D.  **The Bankruptcy Court's Decision is Consistent With Its Earlier Decision in Nisselson v. Softbank Because It and Other Courts Have Distinguished Between Claims Based on Promissory Notes and Claims Seeking to Recover an Equity Investment in a Debtor**

Although Appellants claim that Bankruptcy Court Judge Gropper ignored his own earlier decision in Nisselson v. Softbank AM Corporation f/k/a Softbank Finance corporation et al. (In re MarketXT Holdings Corp., 361 B.R. 369 (Bankr. S.D.N.Y. 2007), in fact, he considered and properly rejected the contention that Waltzer's Claim for damages arising from the sale of his shares in the Debtor should be treated the same for purposes of Section 510(b) as a claim to recover on a promissory note. In Softbank, the creditor had years before the commencement of the bankruptcy case converted its stock interest in the Debtor into a promissory note, and its bankruptcy claim sought only repayment of the note. Id. at 388-89. Judge Gropper ruled in Softbank that the mere fact that the Softbank promissory had its genesis years before in an equity interest was not a sufficient nexus to warrant subordination under Section 510(b). Id. at 388-89.

In the Decision here, Judge Gropper noted the distinction between Waltzer's Claim and Softbank's claim: "[i]f Waltzer had [like Softbank] converted [his equity interest] to a debt interest before the petition date in a non-avoidable transaction, he would presumably have different rights." Appendix, KW 00818. However, as the Court indicated, all Waltzer had at the time of the petition was a litigation claim to recover damages based upon his equity interest.

Appendix, KW00817.

Judge Gropper's Decision was consistent with the case law that, for purposes of § 510(b), claims based upon promissory notes are treated differently than claims for damages arising from the purchase or sale transaction itself. See U.S. Wireless Corporation, Inc. v. Wax (In re Wireless Corp., Inc.), 384 B.R. 713, 725 (Bankr. Del. 2008) (noting that for purposes of §510(b), "claims based on a fixed debt instrument are treated differently from claims based on a judgment debt"); Montgomery Ward Holding Corp. v. Schoeber (In re Montgomery Ward Holding Corp.), 272 B.R. 836, 839 (Bankr. D. Del. 2001) (court holding claim based upon promissory note received in exchange for claimant's equity interest was not subject to subordination because the claim did not concern the purchase or sale transaction itself); Official Comm. of Unsecured Creditors v. Am. Capital Fin. Servs. (In re Mobile Tool Int'l, Inc.), 306 B.R. 778, 782 (Bankr. D. Del. 2004) (court refusing to subordinate claim of former stockholders based upon promissory note issued by debtor to repurchase claimants' stock, finding that when Defendants received the promissory notes, they removed the variable nature of their investment and placed themselves in the position of general creditors); In re Alta+Cast, 301 B.R. 150 (Bankr. Del. 2003) (same judge as in Mobile Tool subordinating claim of former employee based upon the debtor's failure to repurchase his stock, even though that claim had been liquidated in a post-petition judgment).

Notably, the court in U.S. Wireless refused to treat a claim for damages arising out of the purchase or sale of a security like a promissory note claim, and subordinated the claim even though the damage claim had been reduced to a pre-petition judgment. 384 B.R. at 725-26. The court there stated that:

> [W]hen a claimant exchanges his or her equity interest for a fixed debt obligation the equitable nature of the claim is extinguished. The Court will continue to follow this distinction between claims

{10468199:10}    13

> based upon a fixed debt obligation and claims based upon a judgment arising from an equity interest.

Id. at 726. Here, as Bankruptcy Court Judge Gropper noted, Waltzer did not even have a pre-petition judgment, and merely had only a litigation claim, and therefore he had not converted his equity interest into a claim for Section 510(b). Appendix, KW00818-819. However, the Bankruptcy Court also noted that, even if Waltzer had obtained a pre-petition judgment, the weight of authority supports the principle that his equity claim would still not have been converted into a debt claim. Appendix, KW00819.

E.  **The "Harshness" of the Result Is Not a Basis for Denial of Subordination of the Waltzer Claim Pursuant to Section 510(b)**

Appellants contend in their brief that it is "strange and disheartening that a creditor such as Mr. Waltzer, who was defrauded out of the fair value of his [shares of the Debtor], should receive harsher treatment by the court than Softbank, a creditor who could use its knowledge and control of the Debtor to have equity converted to debt". Appellants' Brief at 14-15. Whatever sympathies one might have for Waltzer or any other investor with a claim against an insolvent entity, if a claim falls within the language of Section 510(b), subordination is mandatory. Neither the harshness of the result nor the length of time between the fraudulent activity and the petition provide any basis for denying mandatory subordination.

In In re Enron, 341 B.R. 141 (Bankr. S.D.N.Y. 2006), the bankruptcy court was faced with the issue of whether the claims of former employees against the debtor for fraudulently inducing the employees into electing to receive stock options as part of their compensation packages were subject to mandatory subordination under Section 510(b). In determining that such claims were subject to mandatory subordination pursuant to the statute, Bankruptcy Court Judge Gonzalez noted his sympathy for the former employees, but nonetheless stated:

> The Bankruptcy Code creates a hierarchial and class-structured regime. Unfortunately for the Claimants, as a general principle that regime does not distinguish between claims according to need or equity . . . . The various sections of the Bankruptcy Code spell out in great detail the standards according to which claims are to be organized into classes, and the absolute priority rule as incorporated in the Code rigidly stratifies those classes. Consideration of the normative merits of individual claims is not a component of this priority analysis, except in the limited circumstances where a creditor's claim may be subordinated to other claims of the same class if the creditor is found to have acted inequitably. Stated simply, section 510(b) is not an equitable doctrine and the bankruptcy courts are not courts of chancery.
>
> That is not to say that this scheme is necessary or indispensable. What the American bankruptcy regime gains in efficiency and certainty by looking only to objective economic conditions it arguably loses in public legitimacy by prioritizing less "deserving" claims. However, the Court must apply the law as written. Although the Court is sympathetic to the Claimants' position, this is not the proper venue for their arguments. Section 510(b) represents certain Congressional policy judgments that are unquestionably defensible, and no grounds exist for this Court to override those judgments.

Id. at 169-70.

## CONCLUSION

For all of the foregoing reasons, the Appellees respectfully submit that the bankruptcy court's decision should be affirmed.

Dated: New York, New York
August 22, 2008

WINDELS MARX LANE & MITTENDORF LLP

/s/ Howard L. Simon
Howard L. Simon (HS-6362) hsimon@windelsmarx.com
Regina Griffin (RG-6877) rgriffin@windelsmarx.com
156 West 56th Street
New York, NY 10019
Telephone:    (212) 797-9100
Facsimile:    (212) 797-9161
*Counsel for Alan Nisselson,*
*Responsible Officer of MarketXT Holdings Corp.*

KAYE SCHOLER LLP

Lester M. Kirshenbaum (LK-8139) lkirshenbaum@kayescholer.com
Margarita Y. Ginzburg (MG-6240) mginzburg@kayescholer.com
425 Park Avenue
New York, New York 10022
Telephone:    (212) 836-8000
Facsimile:    (212) 836-6689
*Counsel for Plan Committee*
*of MarketXT Holdings Corp.*

{10468199:9}